# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FORT MYERS DIVISION

EVERY PENNY COUNTS, INC.,

               Plaintiff,

-vs-                                           Case No.  2:07-cv-42-FtM-29SPC

BANK OF AMERICA CORPORATION; and
BANK OF AMERICA, N.A.,

               Defendants.

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This matter comes before the Court on the Defendants Bank of America, N.A. and Bank of America Corporation's <u>Markman</u> Motion for Proposed Claim Construction (Doc. #117) filed on April 2, 2008.  The Plaintiff filed its Response (Doc. # 126) on April 15, 2008.  The matter was referred to this Court by the District Court for a <u>Markman</u> hearing on April 17, 2008.  The <u>Markman</u> hearing was held on May 7, 2008, before the undersigned.

## FACTS

In August of 2000, the United States Patent Office issued  Every Penny Counts (EPC) U.S. Patent No. 6,112,191 (the 191 Patent), which is the patent in dispute in this litigation.  According to EPC, they originally initiated contact with Bank of America in February of 2001 to inquire if Bank of America was interested in entering into a licensing agreement with EPC. (Doc. #1, p. 3).  Again in 2004, EPC contacted Bank of America (VISA) concerning the 191 Patent and proposed a

licensing agreement for other business arrangements between VISA and EPC. (Doc. # 1, p. 4).  The discussions continued into the Spring of 2005 at which time Bank of America ceased contact with EPC. (Doc. # 1, p. 4).

In October of 2005, Bank of America launched a similar program called the "Keep the Change Program" (KTC). (Doc. # 1, p. 4).  EPC alleges that Bank of America's KTC program violates at least one of the claims of the 191 Patent, and alleges that Bank of America took EPC's design from the 191 Patent to create its own similar program rather than enter into a licensing agreement.

The 191 Patent claims two systems:  the Point of Sale System, and the Rounder System. (Doc. # 126, p. 1-2). The 191 Patent states that it is an improved system for consumers payors to save and donate whenever they use cash at a point of sale terminal, write a check, use an ATM machine, or use a credit or debit card. (Doc. # 1, p.2).  The 191 Patent teaches a system to create and distribute excess funds from consumer spending transactions. (Doc. # 126, p.1).  The consumer makes a purchase at the point of sale and the 191 Patent distributes the excess funds to multiple provider accounts for future spending or for charitable contributions. (Doc. # 117, p.2).  Under the 191 Patent's Rounder System, the Consumer instructs the bank or credit card issuer to add a determinant to each transaction after they are returned to the bank or credit issuer for final debiting against the consumers account. (Doc. #117, p. 8).  The consumer can then select the round up amount for each transaction by selecting any number to be added to each transaction or by choosing from several different excess determinations. (Doc. # 117, p. 8).

For example, if a consumer (payor) pays $10.10 for an item at the point of sale, the payor could instruct the 191 patent to enter the round up transaction to the nearest dollar and charge

$11.00.  The extra $.90 cents is then deducted from the payor's account and deposited by the payee into a single managed central clearinghouse's central computer. (Doc. # 1 Ex. A, p. 31, and Doc. # 117, p. 8).  The payor then makes a determination as to how the determinate (additional rounded up funds) will be distributed on a percentage basis into the payor's selected accounts. (Doc. # 117, p.8). The central clearinghouse's computer then distributes the extra $.90 cents to the various accounts according to the payor's predetermined instructions. (Doc. # 117, p. 8).  For example thirty (30%) could go into the payor's IRA, thirty percent (30%) to a savings account, and forty percent (40%) to a charity chosen by the payor.

## DISCUSSION

### I. Legal Standard for Claims Construction

The court and not the jury has the responsibility to construe or interpret disputed terms in patent claims. Markman v Westview Instruments, Inc., 517 U.S. 370, 390-391, 116 S. Ct. 1384, 134 L. Ed. 577 (1996).  "It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" Phillips v. AWH Corporation, 415 F.3d 1303, 1312 (Fed Cir. 2005) (citing Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc., 381 F 3d 1111, 1115 (Fed. Cir. 2004)).  The words of the claim are generally given their ordinary and customary meaning.  Phillips, 415 F.3d at 1312.  "We have made clear, moreover, that the ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e. as of the effective date of the patent application."  Id. at 1313.  How a person of ordinary skill in the art understands a claim term provides an objective baseline from which to begin a claim interpretation.  Id.  Inventors typically are persons skilled in the field of inventing and the language in the patents is addressed to

others who are also skilled in the pertinent field or art. Id.  A person of ordinary skill in the field is deemed to read the terms in the claim in the context of the entire patent including the specification. Id.  "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more that the application of the widely accepted meaning of commonly understood words." Id. at 1314.  Then general dictionaries may be helpful. Id.  When the terms of the claim are not readily apparent and have a particular meaning in a field or art, the Court must look to the intrinsic evidence of the words of the claims themselves, the remainder of the specification, the prosecution history, and then look to the extrinsic evidence of the scientific principles, the meaning of the technical terms, and the state of the art. Id.

## A. Claim Language and Specification (Intrinsic Evidence)

The claim itself provides substantial guidance in determining the meaning of the language. Phillips, 415 F.3d at 1314.  A court should look to the context of the term. Id.  A court should also review the other claims of the patent to determine the meaning of the language in the claim Id. Claims must also be read in view of the specification. Id. at 1315-1316.  A specification may provide a special definition for a claim term that differs from its general meaning, and in such cases the "inventor's lexicography governs." Id. at 1316.  The language in the specification, however, does not "import limitations from the specification into the claims." Varco L.P. v. Pason Systems USA Corp., 436 F.3d 1368, 1373 (Fed Cir. 2006) (quoting CollegeNet, Inc. v. Apply Yourself, Inc., 418 F.3d 1225, 1231 (Fed. Cir. 2005)).  Claims may not be broader in scope than the invention that is set forth in the specification. On Demand Machine Corp. v. Ingram Industries, Inc., 442 F.3d 1331,1340 (Fed. Cir. 2006).  It is necessary to consider the specification as a whole and to read all

of the portions of the written description so that the patent as a whole is internally consistent. <u>Pfizer,</u> <u>Inc. v. Teva Pharmaceuticals USA, Inc.</u>, 429 F.3d 1364, 1373 (Fed. Cir. 2005).

It is generally impermissible to limit a claim to a preferred embodiment or to any inferences drawn from the description of the preferred embodiment. <u>Bell Atlantic Network Services, Inc. v.</u> <u>Covad Communications Group, Inc.</u>, 262 F.3d 1258, 1273 (Fed. Cir. 2001). Even if the specification describes a very specific embodiment, the claims are not confined to the embodiment described. <u>LizardTech, Inc. v. Earth Resource Mapping, Inc.</u>, 433 F.3d 1372, 1377 (Fed. Cir. 2006). "In particular, we have expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment." <u>Id.</u> (citing <u>Gemstar-TV Guide v. Int'l Trade Commission,</u>383 F.3d 1352, 1366 (Fed. Cir. 2004)); <u>Kapusta v. Gale Corp.</u>, 155 Fed. Appx. 518 (Fed. Cir 2005). "To avoid importing limitations from the specification into the claims, it is important to keep in mind that the purpose of the specification is to teach and enable those of skill in the art to make and use the invention and to provide a best mode for doing so." <u>Phillips</u>, 415 F.3d at 1323. Although the task to determine if the preferred patent is the outer limit of the claim or merely an example of the invention may be difficult, the Federal Circuit has found that "attempting to resolve that problem in the context of the particular patent is likely to capture the scope of the actual invention more accurately than either strictly limiting the scope of the claims to the embodiment disclosed in the specification or divorcing the claim language from the specification." <u>Id.</u>

### <u>B. Prosecution History (Intrinsic Evidence)</u>

The prosecution history which is the complete record of the proceedings before the Patent and Trademark Office is considered part of the "intrinsic evidence" for claim construction purposes.

Id. at 1317.  The prosecution history shows how the inventor and the Patent Trademark Office understood the patent. Id.  The prosecution history is generally less useful than the specification because it is the ongoing negotiations of the applicant and the Patent and Trademark Office and lacks the clarity of the specification. Id.  "Disclaimers based on disavowing actions statements during prosecution, however, must be both clear and unmistakable." Sorenson v. International Trade Commission, 427 F.3d 1375, 1379-1380 (Fed. Cir. 2005) (citing Omega Engineering, Inc. v. Raytek Corp., 334 F.3d 1314, 1326 (Fed. Cir. 2003)).  The statement of an examiner alone will not necessarily limit a claim. Bell Atlantic Network Services, 262 F.3d at 1273.

### C. Dictionaries, Treatises (Extrinsic Evidence)

Extrinsic evidence is less significant and less reliable than intrinsic evidence. Phillips, 415 F.3d at 1318.  Dictionaries and treatises, especially technical dictionaries, may be helpful to the court in defining technical terms. Id.

### D. Expert Testimony (Extrinsic Evidence)

Expert testimony may be useful to the court to provide background on the technology, on how the invention works, and to ensure that the court's understanding of the technical aspects of the patent are consistent with a person of ordinary skill in the art. Id.  A court should ignore conclusory, unsupported assertions by experts, and any expert testimony that is at odds with the terms of the claim itself, the prosecution history, or the written record of the patent. Id.

## II Claim Construction of the Disputed Terms in Claim 15

Claim construction is the judicial statement of what is and is not covered by the technical terms and other words of the claim. Netword, LLC. v. Centraal Corp., 242 F.3d 1347, 1352 (Fed.

Cir. 2001).  The only claim in dispute in this action is Claim 15 of the 191 patent.  Claim 15 reads

as follows:

> 15. A system, comprising:
> A network;
>
> entry means coupled to said network for entering into the network an amount being paid in a transaction by a payor;
>
> identification entering means in said entry means and coupled to said network for entering an identification of the payor;
>
> said network including **computing means** having data concerning the payor including an **excess determinant established by the payor** for the **accounts**;
>
> said **computing means** in said network being responsive to said data and said identification entering means for **determining an excess payment on the basis of the determinant established by the payor**, and
>
> Said **computing means** in said network being responsive to the excess payment for **apportioning,** at least a part of the excess payment among said **accounts** on the basis of the excess determined and established by the payor and on the basis of commands established by the payor and controlled by other than the payee (*emphasis added*).

The Defendant disputes the following language: (1) "excess determinant established by the

payor;" (2) "determining an excess payment [on] the basis of the determinant established by the

payor;" (3) "apportioning;" (4) "accounts;" and (5) "computing means."  The Plaintiff also submits

to the Court interpretations of the uncontested language in Claim 15.  However, only the terms that

are in controversy need to be construed and then only to the extent necessary to resolve the

controversy. Vivid Technologies, Inc. v. American Science & Engineering, Inc., 200 F.3d 795, 803

(Fed. Cir. 1999); U.S. Surgical Corp. v. Ethicon, Inc. ,103 F.3d 1554, 1568 (Fed. Cir. 1997) (holding

-7-

claim construction is for "resolution of disputed meanings").  Therefore, it is appropriate for the

Court to construe only the disputed language from Claim 15.

### (1) Claim Construction of "Excess Determinant Established by the Payor

The Defendant's proposed construction of "excess determinant established by the payor" is

"an amount that the payor instructs to be added to a transaction and that is set up by the payor."  The

Plaintiff's proposed construction is "a bank or credit institutions central computer which contains

the customer's account instructions."  The phrase from which the disputed language was selected

states "said network including computing means having data concerning the payor including an

**excess determinant established by the payor** for the accounts. . ." (*emphasis added*). The Plaintiff

argues that this constitutes a means-plus-function clause and therefore, the phrase is defined by the

claim's element structure.

Claim construction differs somewhat for a specific subset of patent limitations which is

defined and governed according to the following statutory language in the United States Code:

> An element in a claim for a combination may be expressed as a means ... for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

Thermal Technologies, Inc. v. Dade Service Corp., WL 3313456, *1 -2 (M.D. Fla. June 14,2004).

(citing 35 U.S.C. § 112 ¶ 6).  Such patent claim terms are known generally as "means-plus-function"

limitations. Thermal Technologies, WL 3313456, at *1 -2 (citing Apex, Inc. v. Raritan Computer,

Inc., 325 F.3d 1364, 1371 (Fed. Cir. 2003)).  A patent applicant may use a means-plus-function

limitation to claim an element of an apparatus functionally, that is, without reciting in the claim the

structure to perform that function. Id.  If a patent claim uses the term "means," a rebuttable

presumption arises that the claim presents a "means-plus-function" limitation. Id. Conversely, if the term "means" is not used, a rebuttable presumption arises that the claim does not present a "means-plus-function" limitation. Id. A party seeking to overcome either presumption must do so by a preponderance of the evidence. Id. at 1372. For instance, when the term "means" is not recited in a claim, a party seeking to portray the claim as a means-plus-function limitation must establish "the claim term fails to recite sufficiently definite structure or else recites a function without reciting sufficient structure for performing that function." Id. (citations and internal quotation marks omitted). Absent a sufficient rebuttal, the existing presumption will prevail. Id.

In this instance, Claim 15 is a means-plus-function claim. A means-plus-function limitation recites a "function to be performed rather than definite structure or materials for performing that function" and must not recite a "definite structure which performs the described function." BillingNetwork Patent, Inc. v. Cerner Physician Practice, Inc., 2006 WL 263601 *11 (M.D.Fla. February 2, 2006) (citing Chiuminatta Concrete Concepts, Inc. v. Cardinal Industries, Inc., 145 F.3d 1303, 1307-08 (Fed.Cir.1998); Cole v. Kimberly-Clark Corp., 102 F.3d 524, 531 (Fed.Cir.1996)).

Two claim construction questions arise with elements expressed in means-plus-function form. The first step in construing a means-plus-function limitation is to identify what is the function claimed in that element. Asyst Technologies, Inc. v. Empak, Inc., 268 F.3d 1364, 1369 (Fed.Cir.2001); A1-Site Corp. v. VSI International, 174 F.3d 1308, 1320 (Fed. Cir. 1996). The second step is to "identify what structure or material disclosed in the specification performs the function claimed in that element?" Atmel Corp. v. Information Storage Devices, Inc., 198 F.3d 1374, 1379 (Fed. Cir.1999); A1-Site Corp., 174 F.3d at 1320. Means-plus-function claims are not construed literally, therefor, the required means to perform the specified function cannot be taken

to mean any and all means, but must be limited to the means cited in the claim. <u>Billing Network Patent, Inc.</u>, WL 263601 at *11.

The first step in the means-plus-function analysis is to identify the function claimed in the element.  In this instance, the function claimed in the element is the distribution of the excess determinant by computing means.  The Defendant believes the excess determinant is established by the payor and distributed by a computer but not necessarily limited to the banks central computer. The best place to determine the meaning of the language is the plain language used in the 191 Patent itself. <u>Apex, Inc. v. Raritan Computer, Inc.</u>, 325 F.3d 1364, 1371 (Fed. Cir. 2003) (holding that in analyzing the intrinsic evidence we start with the language of the claims and engage in a "strong presumption" that the claim terms carry their ordinary meaning as viewed by one of ordinary skill in the art).

Throughout the entire 191 Patent, the payor is always the entity choosing the determinant amount to be subtracted and distributed to the various accounts.  The Patent itself states "[u]nder this system the SP (subscriber payor) opens up a new account or updates an existing account e.g. checking, credit or debit account, and instructs the bank or credit card issuer to add or subtract a determinant to each transaction after they are returned to the bank or credit issuer for final debiting against the consumer's account." (Doc. # 1, Ex. A. The 191 Patent, § 12:1-6).  In three different clauses, Claim 15 reads that the determinant is "established by the payor." (Doc. # 1, Ex. A. The 191 Patent § 19:27-47).  It is clear from this context, and the language in the 191 Patent, that the disputed term refers to who decides the determinant excess amount, in this case it is the payor and not the bank's central computer system.  Therefore, the function to be performed is the distribution of the excess determinant which the payor chooses.

-10-

The next step, then, is to determine the structure.   Again we can learn what the patentee and the Patent and Trademark Office had in mind by looking at the plain language of the 191 Patent.  The claim states in pertinent part: "said network including computing means having data concerning the payor including an **excess determinant established by the payor** for the accounts . . ." (Doc. # 1, Ex. A. The 191 Patent, § 19:35-37)(*emphasis added*).  Thus, the structure which performs the function and distributes the determinant is the computing means.

While the Plaintiff seeks to define "computing means" as the bank's central computer, at this juncture the term in dispute is the function.  Since the term means-plus-function claim must not recite a "definite structure which performs the described function," the Court will construe the function and leave the structure "computing means" to be determined   later in the R & R. BillingNetwork Patent, 2006 WL 263601 at *11.  Thus the term "computing means" as it relates to this function is merely how the excess determinant is distributed once the payor makes a determination on the amount.

The disputed language in Claim 15's language pertains to the payor's instructions to the necessary computing means regarding the excess determinant amount to be taken from each transaction and transferred to the designated accounts rather than a determination made by the bank's central computer.  The intrinsic evidence from the 191 Patent indicates the phrase is referring to the amount selected by the payor to be deducted from his or her account at the end of each transaction. As a result, the Court respectfully recommends that the Defendant's interpretation "[a]n amount that the payor instructs to be added to a transaction and that is set up by the payor." is the proper construction of the term "excess determinant established by the payor."

*(2)Determining an Excess Payment [on] the Basis of the Determinant Established by the Payor*

The second phrase in dispute reads in pertinent part as "[d]etermining an excess payment [on] the basis of the determinant established by the payor." The Defendant's proposed construction reads "[s]ettling or deciding on an excess payment based on the amount that the payor instructs to be added to a transaction and that is set up by the payor." The Plaintiff EPC's proposed construction reads "a bank or credit institution's [central computer], which contains the customer's account instructions and applies those instructions to create the excess funds according to the algorithm described in Figure 9A, 9B, 10A, or 10B."[1]

Again, the plain language of the 191 Patent reads that the determinant amount is made on the basis of the determinant established by the payor. (Doc. # 1, Ex. A. The 191 Patent § 19:38-40). The computing means then distributes the determinant amount in accord with the payor's instructions. While this is again a means-plus-function claim, it is evident from the Claim's language that the "computing means" and the algorithms used by the computer as described in Figures 9A, 9B, 10A, or 10B are the structural means used to perform the function of distributing the "excess determinate established by the payor." The determinant amount is made on the basis of the determinant established by the payor. This is the function. Once the function is identified, the Court then construes the meaning of the function using the ordinary principles of claim construction. Lockheed Martin Corp. v. Space Systems/ Loral, Inc., 324 F.3d 1308, 1318 (Fed Cir. 2003) (holding that a means-plus-function recites a function to be performed rather than a definite structure or materials for performing that function). In this Court's opinion, the Plaintiff's construction of the term is merely an attempt to impose a structural definition in place of the function.

---

[1]    Figures 9A, 9B, 10A, and 10B are found in (Doc. # 1 Ex. A, p. 21,22,26, and 27).

Claim 15 clearly reads "having data concerning the payor including the **excess determinant established by the payor**. (Doc. # 1, Ex. A, The 191 Patent § 19:27-47)(*emphasis added*).  The Plaintiff EPC's construction does not make sense when read in light of the entire Claim 15 because without the payor's determination of the excess determinant, there is nothing for the computing means to determine.  Thus, the Defendant's interpretation that the term means "settling or deciding on an excess payment amount based on the amount that the payor instructs to be added to a transaction and that is set up by the payor is the proper construction for the claim [d]etermining an excess payment [on] the basis of the determinant established by the payor," and should be the construction adopted by the Court in reviewing any dispositive motions.

### *(3) Apportioning*

The Plaintiff EPC argues for a means-plus-function claims construction of the term "apportioning".  EPC  states the term "apportioning" must be construed as:

> *Function*: apportioning at least a part of the excess funds among said accounts on the basis of the excess determinate and established by the customer and on the basis of commands established by the customer.

> *Structure*: a bank or credit institution's central computer, which contains the customers account instructions, applies those instructions to create the excess funds, and then apportions the excess funds to sub-account(s) according to Steps 770 and 775 in the algorithm described in Figure 9A, or Steps 980 and 990 in the algorithm described in Figure 10A.

Means-plus-function claiming applies only to purely functional limitations that do not provide the structure that performs the recited function. Phillips, 415F. 3d 1303, 1311 (Fed. Cir. 2005) (citing Watts v. XL Systems, Inc., 232 F. 3d 877, 880 (Fed Cir. 2002)). The claim must not recite a "definite structure which performs the described function." BillingNetwork Patent, 2006 WL

263601 at *11.  The function here is to apportion the payor's determinate amount to the various accounts selected by the payor.  Once the function is identified, the Court then construes the meaning of the function using the ordinary principles of claim construction.  <u>Lockheed Martin Corp.</u>, 324 F.3d at 1318.

In this instance, the word "apportioning" is not a technical term of art and was not defined by the 191 Patent's lexicographer.  Therefore, the term "apportioning" should merely be read as having its ordinary meaning.  <u>Johnson & Johnson Vision Care, Inc. v. Ciba Vision  Corp.</u>, 540 F. Supp. 2d 1233, 1240 (M.D. Fla. 2008) (holding that in some cases the claim words have their ordinary meaning that may be readily apparent even to lay judges, and in such cases the claim construction involves little more than the application of the widely accepted meaning of commonly understood words); *See* Phillips, 415F. 3d at 1312 (holding "[W]ords of claim are generally given their ordinary and customary meaning.").  The root word apportion means "[t]o divide and assign according to a plan; allot." *The American Heritage Dictionary of the English Language* 89 (Anne H. Soukhanov ed., Houghton Mufflin Co. 3rd ed, 1996).  The Defendants proposed construction of apportioning is "dividing and assigning according to some rule of proportional distribution."  This construction of the term comports with the language of Claim 15 which reads:

> Said computing means in said network being responsive to the excess payment or **apportioning**, at least a part of the excess payment among said accounts on the basis of the excess determined and established by the payor (*emphasis added*).

(Doc. # 1, Ex. A, The 191 Patent § 19:35-37).

Thus, the computer means divide and assign the excess determinate according to proportional distribution established by the payor.  Consequently after applying the widely accepted meaning of the commonly understood definition of the word "apportioning", the Court recommends that the plain language meaning offered by the Defendant should be the claim construction used by the Court.  Therefore, it is respectfully recommended that "apportioning" means "dividing and assigning according to some rule of proportional distribution."

### (4) Accounts

The Plaintiff offers that the word "accounts" as used in Claim 15 refers to "one or more accounts."  The Defendant counters that under the rules of grammar the term must mean multiple accounts.  Claim 15 reads in pertinent part:

> Said computing means in said network being responsive to the excess payment for apportioning, at least a part of the excess payment among said **accounts** on the basis of the excess determined and established by the payor and on the basis of commands established by the payor and controlled by other than the payee (*emphasis added*).

(Doc. # 1, Ex. A, The 191 Patent § 19:42-47).  Courts can look to the other claims in the patent language "because claim terms are normally used consistently throughout the patent, the meaning of the term in one claim can often illuminate the meaning of the same term in other claims." Craig v Foldfast, Inc., 487 F. Supp. 2d 1364, 1367 (S.D. Fla. 2007).

In this instance, the 191 Patents flow chart diagrams Figures 1A through Figures 1F all show the payors determinant flowing through the merchants to the clearinghouse to multiple accounts. (Doc. # 1, Ex. A, The 191 Patent pp. 3-8).  The diagrams are supported by the language contained in the 191 Patent's Detailed Description of Preferred Embodiments (Detailed Description). (Doc.

# 1, Ex. A, The 191 Patent § 2).  The Detailed Description describes the purpose and operation of the 191 Patent's programs.  Under the terms of the Detailed Description

> an open POS network embodies a four level spending/saving system comprised of Level 1 SP (multiple subscribers payors), who tender excess payments or deposit excess funds to Level 2 MC (multiple merchant/collectors), who in turn make computer entry of data and funds for electronic transfer to Level 3 CCC (a singular managed clearinghouse central computer), who in turn transfers data and funds to Level 4 (multiple provider accounts), for the final purchase of products or services.

(Doc. # 1, Ex. A, The 191 Patent § 2:45-54).  The Detailed Description continues "the funds are then forwarded, when they reach pre-selected thresholds, by EDI (Electronic Data Interface) transfer to Level 4, the provider accounts." (Doc. # 1, Ex. A, The 191 Patent § 4:7-10).  Thus, the language used by the 191 Patent to describe its purpose uses the same plural language "accounts" as Claim 15.

The Plaintiff argues that the other claims in the 191 Patent use the term "one or more accounts" when detailing the distribution of the determinate amount.  Indeed, some of the Claims use the term "one or more accounts," as well as the singular term "account."  However, the subsequent dependent claims that are dependent on Claim 15 also use the plural "accounts" and do not refer to the "one or more accounts" claim language used in the preceding Claims.

Under the guiding  principles of the English language a plural means more than one or multiple units.  It is clear the Plaintiff understands the use of the plural, and singular, versus a combination of singular and plural by the fact that the varying terms are used throughout the 191 Patent in different Claims and in the Specifications.  Thus, it is respectfully recommended that the term "accounts" is used as it would be in ordinary language, that is as "multiple accounts".

*(5) Computing Means*

The Plaintiff defines the term "computing means" as:

> *Function*: having data concerning the payor including an excess determinant   established by the payor for the accounts; being responsive to said data and said identification entering means for determining an excess payment to the basis of the determinant established by the payor, and being responsive to the excess payment for apportioning at least a part of the excess payment among said accounts on the basis if the excess determined and established by the payor and controlled by other than the payee.   The algorithm is described in Figure 9A, 9B, 10A or 10B.

> *Structure*: a bank or credit institutions's central computers.

The Defendant does not offer a claim construction for the term "computing means."

As noted above means-plus-function claiming applies only to purely functional limitations that do not provide the structure that performs the recited function. <u>Phillips</u>, 415F. 3d 1303, 1311 (Fed. Cir. 2005) (citing <u>Watts v. XL Systems, Inc.</u>, 232 F. 3d 877, 880 (Fed Cir. 2002)). The claim must not recite a "definite structure which performs the described function." <u>BillingNetwork Patent</u>, 2006 WL 263601 at *11.  The Plaintiff states the "computing means" is the bank's central computer and therefore the structure for performing the designated function.  However, after identifying the function of the means-plus-function of the claim language, the Court looks next to the written description to identify the structure corresponding to the function.  <u>Lockheed Martin Corporation v. Space Systems/Loral, Inc.</u>, 324 F.3d 1308, 1320, 66 U.S. P.Q. 1282 (Fed. Cir. 2003) (citing <u>Micro Chemical, Inc. v. Great Plains Chemical, Co.</u>, 194 F.3d1250, 1258, 52 U.S.P.Q. 2d 1258 (Fed. Cir. 1999).

The 191 Patent's Specification describing the diagrams that pertain to Claim 15 states in pertinent part:

> FIGS. 9A-E is a flow chart if the data processing methodology used in the terminals and central computers operated by banks to process rounder transactions in FIGS. 7A&B.
>
> FIGS. 10A-E is a flow chart of the data processing methodology used in the terminals and central computers operated by banks and credit institutions to process rounder transactions in FIGS 7A&B.

(Doc. # 1, Ex. A, The 191 Patent § 2:33-40).  Section 13 of the 191 Patent again describes the process of transferring the determinate amount as being conducted by the bank's central computer. (Doc. # 1, Ex. A, The 191 Patent § 13:35-67).  Thus, based upon the plain language used in the 191 Patents Specifications the term "computing means" used in Claim 15 should be construed to refer to the bank's central computer.

Accordingly, it is now

**RESPECTFULLY RECOMMENDED**:

The Defendants Bank of America, N.A. and Bank of America Corporation's <u>Markman</u> Motion for Proposed Claim Construction (Doc. #117) should be **GRANTED as follows:**

(1) The Term "excess determinant established by the payor" should be construed as the payor decides the determinant excess amount, and not the bank's central computer system**.**

(2) The Term "[d]etermining an excess payment [on] the basis of the determinant established by the payor" should be construed as "settling or deciding on an excess payment based on the amount that the payor instructs to be added to a transaction and that is set up by the payor."

(3) The Term "apportioning" should be construed as "dividing and assigning according to some rule of proportional distribution."

(4) The Term "accounts" should be construed as referring to "multiple accounts."

(5) The Term "computing means" should be construed as the "bank or credit card issuing institution's central computer."

**Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.**

**Respectfully recommended** at Fort Myers, Florida, this ____3rd____ day of July, 2008.

SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies: All Parties of Record