UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

EVERY PENNY COUNTS, INC.,

        Plaintiff,

vs.                                    Case No.   2:07-cv-42-FtM-29SPC

BANK OF AMERICA CORPORATION; and
BANK OF AMERICA, N.A.,

        Defendants.
_____

**OPINION AND ORDER**

     This matter comes before the Court on a Report and Recommendation (Doc. #164) filed pursuant to the Court's Order of Reference directing the assigned magistrate judge to conduct a Markman[1] hearing regarding claim construction issues.  In this patent infringement case, plaintiff Every Penny Counts, Inc. (EPC) alleges that defendants' "Keep the Change Program" infringes the Rounder system encompassed by Claim 15 of its patent, U.S. Patent No. 6,112,191 ('191 Patent).  After conducting the Markman hearing the magistrate judge recommended the construction to be given to five disputed terms.  Both sides filed Objections (Docs. ## 165, 166) and Responses (Docs. ## 167, 168) to the Objections.

---

[1]Markman v. Westview Instruments, Inc., 517 U.S. 370 (1996).

**I.**

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject or modify, in whole or in party, the magistrate judge's findings and recommendations. 28 U.S.C. § 636(b)(1); Stephens v. Tolbert, 471 F.3d 1173, 1176 (11th Cir. 2006). A district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). This requires that the district judge "give fresh consideration to those issues to which specific objection has been made by a party." Jeffrey S. v. State Bd. of Educ. of Ga., 896 F.2d 507, 512 (11th Cir. 1990)(quoting H.R. 1609, 94th Cong., § 2 (1976)). The district judge reviews legal conclusions *de novo*, even in the absence of an objection. See Cooper-Houston v. Southern Ry. Co., 37 F.3d 603, 604 (11th Cir. 1994).

**II.**

Patent '191 relates to a "Method and System to Create and Distribute Excess Funds From Consumer Spending Transactions." (Doc. #1-2, p.2.) The Abstract in patent '191 gives the overview of the invention:

> "An improved system for consumer payors to save and donate whenever they use cash at a point of sale terminal, write a check, use and ATM machine, or use a credit or debit card. The POS system is a network composed of subscriber/payors, neutral merchant/collectors, a central clearinghouse, and

>     provider accounts.  The Rounder system is a network
>     composed of subscriber/payors, payees, account managers,
>     and provider services.  The systems together provide
>     subscriber/payors with a seamless way to save/donate
>     every time they spend.

(Doc. #1-2, p. 2.)  As the Report and Recommendation correctly states, the only claim at issue is Claim 15 of the '191 patent, and there are five disputed terms.  (Doc. #164, pp. 7-8).  Claim 15, with the disputed terms highlighted, provides as follows:

> 15.  A system comprising:
>
>     a network;
>
>     entry means coupled to said network for entering into the network an amount being paid in a transaction by a payor;
>
>     identification entering means in said entry means and coupled to said network for entering an identification of the payor;
>
>     said network including **computing means** having data concerning the payor including an **excess determinant established by the payor** for the **accounts**;
>
>     said **computing means** in said network being responsive to said data and said identification entering means for **determining an excess payment on the basis of the determinant established by the payor**, and
>
>     said **computing means** in said network being responsive to the excess payment for **apportioning**, at least a part of the excess payment among said **accounts** on the basis of the excess determined and established by the payor and on the basis of commands established by the payor and controlled by other than the payee.

(Doc. #1-2, p. 40, col.1 l.26-47.)

**III.**

Defendants Bank of America Corporation and Bank of America, N.A. (collectively Bank of America or defendants) assert that the magistrate judge overlooked their proposed construction of the term "computing means" when she stated that "Defendant does not offer a claim construction for the term 'computing means.'" (Doc. #164, p. 17.)  Defendants point out that their Opening Markman Brief did indeed offer a claim construction of that term (Doc. #114, pp. 21-23).  Plaintiff agrees that the Report and Recommendation is incorrect in its statement in this regard.  (Doc. #166, p. 3; Doc. #167, p. 1.)  The Court will sustain defendants' Objection, and will review the construction of this term *de novo* after considering the claim construction suggested by defendants in their Opening Markman Brief.

**IV.**

Plaintiff raises a number of objections to the Report and Recommendation and the proposed construction of the disputed terms as set forth in the Report and Recommendation.

**A. Description of '191 Patent:**

Plaintiff argues that the "Facts" section of the Report and Recommendation does not accurately describe the Rounder system of the '191 patent.  Plaintiff argues that the magistrate judge erred in citing to defendants' Initial Markman Brief to describe how the Rounder system functions, and asserts that the magistrate judge

should have referred to the specific language of the patent itself or to plaintiff's description of the Rounder system in their <u>Markman</u> Brief. (Doc. #166, pp. 4-5.) The Court overrules this objection.

The Court finds no error in the summary description of the Rounder system in the "Facts" portion of the Report and Recommendation. The portion of defendants' Initial <u>Markman</u> Brief describing the Rounder system cited in the "Facts" portion of the Report and Recommendation set forth the exact language of Claim 15; this exact language of Claim 15 is later recited in the Report and Recommendation at page 7. To the extent plaintiff objects that the exact language of Claim 15 was not also set forth in the "Facts" portion, the Court finds such an objection frivolous.

Plaintiff's description of the Rounder system in its <u>Markman</u> Brief, which it asserts the magistrate judge should have utilized, is as follows:

> Customers who choose to enroll in the Rounder System can have individual consumer transactions operated on in various ways via a "rounder function." For example, the "rounder function" can include adding fixed dollar amounts, percentages or rounding up the enrolled consumer's transactions to the next whole dollar. If "whole dollar rounding" is chosen, the Rounder System would operate as follows: a consumer could make a purchase for $10.14 with $11.00 being debited from their checking account and $0.86 being the "rounder amount" which is transferred to a different account.

(Doc. #126, p. 2.) While this is far less complete and informative than the description provided in the Report and Recommendation, the

Court will nonetheless consider it in the review of the Report and Recommendation.

Contrary to plaintiff's objection, the Court does not find that a fair reading of the "Facts" section "conflates" the claim construction with the general background facts. When the Report and Recommendation was construing the five disputed terms, it said so specifically. (Doc. #164, pp. 8-18.) This objection is overruled.

**B.   General Legal Principles:**

Plaintiff's Objections does not seem to challenge the "Legal Standard for Claims Construction" section of the Report and Recommendation (Doc. #164, pp. 3-6), although plaintiff does object to the application of these rules to the construction of certain terms. The Court adopts the "Legal Standard for Claims Construction" section of the Report and Recommendation as setting forth the correct legal principles. The Court will discuss the application of these principles in connection with its discussion of the objections to the proposed construction of specific terms.

**C.   "Excess Determinant Established by the Payor":**

Plaintiff argues that the recommended construction of the disputed term "excess determinant established by the payor" is erroneous. (Doc. #166, pp. 5-11.) The Report and Recommendation first recommends that the term be construed to mean "an amount that the payor instructs to be added to a transaction and that is set up

by the payor" (Doc. #164, p. 11), and then recommends that the term be "construed as the payor decides the determinant excess amount, and not the bank's central computer system." (Doc. #164, p. 18.) According to plaintiff, neither recommended construction is correct.

**(1) Second Recommended Construction:**

The Court finds that while the second recommended construction may accurately describe the effect of the term, it is not a sufficiently literal interpretation of the term. That definition is therefore not accepted, and the objection to this proposed definition is sustained.

**(2) First Recommended Construction:**

The Report and Recommendation found, and all parties agree, that "Claim 15 is a means-plus-function claim." The Report and Recommendation found that "the function claimed in the element is the distribution of the excess determinant by computing means," "the function to be performed is the distribution of the excess determinant which the payor chooses;" and that "the structure which performs the function and distributes the determinant is the computing means." (Doc. #164, pp. 9-11.) The Report and Recommendation further found that "[t]he disputed language in Claim 15's language pertains to the payor's instructions to the necessary computing means regarding the excess determinant amount to be taken from each transaction and transferred to the designated accounts

rather than a determination made by the bank's central computer." (Doc. #164, p. 11.) "The intrinsic evidence from the 191 Patent indicates the phrase is referring to the amount selected by the payor to be deducted from his or her account at the end of each transaction." Id.  For this reason, the magistrate judge recommended that the term "excess determinant established by the Payor" be construed to mean "an amount that the payor instructs to be added to a transaction and that is set up by the payor." Id.

Plaintiff argues that the magistrate judge erred in relying on intrinsic evidence when the meaning of the term is readily apparent.  Using a dictionary definition, plaintiff argues that both it and defendants agreed that the readily apparent meaning of "established" is "to set up," and that the magistrate judge should have used "set up" as the meaning of "established by the payor." (Doc. #166, p. 7.)[2]  Later, plaintiff also argues that "instructs" would be an appropriate definition. (Doc. #166, pp. 8, 9.) The magistrate judge used both "instruct" and "set up" in her determination.

The Court finds that the magistrate judge did not err in considering intrinsic evidence to construe the term, since it does not have a readily apparent meaning.  Plaintiff's objection to the

---

[2]The Court rejects defendants' argument that a district court cannot consider an issue that was not raised before the magistrate judge and is therefore waived before the district court. (Doc. #168, p. 13.)  The Court will exercise its broad discretion and consider the issue. Stephens v. Tolbert, 471 F.3d 1173, 1175-77 (11th Cir. 2006).

contrary is overruled. The Court also agrees with defendants that using a dictionary definition before considering the intrinsic evidence would have been improper. Phillips v. AWH Corp., 415 F.3d 1303, 1312-19 (Fed. Cir. 2005)(en banc), cert. denied, 546 U.S. 1170 (2006).

The Court finds that "instructs" correctly focuses on what the consumer (payor) does, while "set up" is either unnecessarily redundant of "instructs" or focuses on what the bank or credit card issuer physically is to do as the result of the consumer's instruction. "Established by the payor" within Claim 15 focuses on the consumer, and therefore "instructs" is the proper construction. "Instructs" in this context is different than simply electing to participate in the savings program, as argued by plaintiff. (Doc. #166, p. 8.) It specifically relates to the calculation of the determinant after the consumer makes the election to participate in the program.

The court agrees with plaintiff that the meaning of "excess determinant," as determined by the intrinsic evidence, particularly the specification, is "a numerical function applied against the face amount of each of the payor's financial transactions." (Doc. #166, pp. 9-10.) Therefore, the Court finds that the meaning of the term "excess determinant established by the Payor" in Claim 15 is "an amount, determined by applying a numerical function against the face amount of each of the payor's financial transaction, that

the payor instructs to be added to or subtracted[3] from a financial transaction."

## D. "Determining an Excess Payment [on] the Basis of the Determinant Established by the Payor":

The Report and Recommendation found that the term "determining an excess payment [on] the basis of the determinant established by the payor" means "settling or deciding on an excess payment based on the amount that the payor instructs to be added to a transaction and that is set up by the payor." (Doc. #164, pp. 12-13.) Plaintiff argues that this was error because it simply used the dictionary definition of "determining" instead of using the language of the specification and, in any event, is incorrect. (Doc. #166, pp. 11-12, 12-13.)

The Report and Recommendation did not simply use a dictionary definition to arrive at the conclusion that defendants' interpretation was correct. (Doc. #164, pp. 11-12.) Contrary to plaintiff's objection, the magistrate judge did construe the term in its context, and properly utilized intrinsic evidence. Therefore, this objection (Doc. #166, pp. 11-12) is overruled.

The Court does not agree that "determining an excess payment" means "to create excess funds," as plaintiff argues. While this may be the effect, the intrinsic evidence establishes that this

---

[3]Some financial transactions can create excess funds by subtraction, as the specification indicates. (Doc. #1-2, p. 36, col.1 l. 36-46, 59-64.)

simply means "calculating an excess payment." E.g., "Referring now to calculating the additional amount by predetermined data, referred to as the rounder system, . . ." (Doc. #1-2, p. 34, col.1 l.24-25.) The Court finds that the term "determining an excess payment [on] the basis of the determinant established by the payor" means "calculating an excess payment based on the amount, determined by applying a numerical function against the face amount of each of the payor's financial transaction, that the payor instructs to be added to or subtracted from a financial transaction."

**E.   "Apportioning":**

The Report and Recommendation recommends that "apportioning" be construed to mean "dividing and assigning according to some rule of proportional distribution." There are no objections to this construction, and the Court adopts it.

**F.   "Accounts":**

The Report and Recommendation recommends that the term "accounts" be construed as referring to "multiple accounts." (Doc. #164, pp. 19.) Plaintiff objects, and asserts that the proper meaning is "one or more accounts." (Doc. #166, pp. 13-14.) Thus, the disagreement is whether "accounts" literally means plural, i.e., more than one account.

Plaintiff objects on the basis that the magistrate judge simply applied rules of grammar in reaching her determination.

-11-

(Doc. #166, pp. 14-17.)  The Court agrees that resolution of this issue is not simply a matter of grammar.  The Report and Recommendation did not, however, simply apply rules of grammar. The magistrate judge noted that defendants argued their position on the basis of rules of grammar (Doc. #164, p. 15), but the Report and Recommendation examined Claim 15 itself as well as the specifications for Claim 15 and other claims.  (Doc. #164, pp. 15-16.)  Unlike plaintiff, the Court does not read the magistrate judge's subsequent statement the "[u]nder the guiding principles of the English language a plural means more than one or multiple units" (Doc. #164, p. 16) to negate her reliance on the claims and specifications.  This objection is therefore overruled.

Plaintiff also argues that the magistrate judge erred in relying upon portions of the patent that embodies a different system than the one at issue, i.e., by relying on portions of the POS system instead of just the Rounder system.  (Doc. #166, pp. 13, 17-20.)  The Court finds no error in the reference to and reliance upon the POS system, in addition to the language of Claim 15, in the determination of the meaning of the term "accounts."  After all, the '191 patent Abstract states that the POS system and the Rounder system "together provide subscriber/payors with a seamless way to save/donate every time they spend."  (Doc. #1-2, p. 2.) Therefore, the language of other claims bear on the proper interpretation of the disputed term.  <u>Bd. of Regents of the Univ. of Tex. Sys. v. BenQ Am. Corp.</u>, 533 F.3d 1362, 1368 n.5 (Fed. Cir.

2008)(citing Phillips, 415 F.3d at 1314).  This objection is overruled.

The Court does agree, however, with plaintiff's argument that the substantive definition recommended for "accounts" is incorrect. The use of plural terms can be problematic, since "in context, the plural can describe a universe ranging from one to some higher number, rather than requiring more than one item." Versa Corp. v. Ag-Bag Int'l Ltd., 392 F.3d 1325, 1330 (Fed. Cir. 2004)(citation omitted). This is not resolved based on the language of Claim 15 itself, since the meaning is not readily apparent. The specifications certainly establish that the invention contemplates and allows multiple accounts. E.g., "The excess funds created are then put aside in special accounts for future spending." (Doc. #1-2, p. 31, col.1 l.20-21.) Additionally, the specifications give instructions on opening new "accounts" (Doc. #1-2, p. 36, col.2 l.36-38) and on transfers to "other accounts." (Doc. #1-2, p. 37, col.2 l.1-2.) The specifications, however, do not limit the invention to multiple accounts. The specification provides that under the Rounder system the consumer "opens up a new account or updates an existing account" and gives instruction to the bank or credit card issuer "for final debiting against the consumer's account." (Doc. #1-2, p. 36, col.2 l.1-6.) The excess funds created by the Rounder system "can be held internally by the bank or credit institution or assigned to other providers . . ." (Doc. #1-2, p. 36, col.2 l.7-9.) There is nothing in the claim language

or the specifications that would suggest that a consumer who wishes to save or to contribute to charity -the two purposes identified in the specifications- must save in more than one account or must contribute to more than one charity. In other words, nothing suggests that a consumer cannot participate if he or she only wishes to save to one account or to contribute to one charity through one account. Accordingly, the Court sustains this objection and determines that "accounts" means "one or more accounts."

**G. "Computing Means":**

The Report and Recommendation recommends that the term "computing means" be construed as "the bank or card issuing institution's central computer." (Doc. #164, p. 19.) Plaintiff objects that while this definition correctly describes the structure of the means-plus-function claim language, it does not describe the function. Plaintiff proposes a three-pronged description of the function. (Doc. #166, pp. 23-25.) Defendants respond that function was not raised or briefed before the magistrate judge, and in any event is not a disputed component of the term. Defendants propose a modified definition from that in the Report and Recommendation. (Doc. #168, pp. 18-19.)

"In a means-plus-function claim in which the disclosed structure is a computer, or microprocessor, programmed to carry out an algorithm, the disclosed structure is not the general purpose computer, but rather the special purpose computer programmed to

-14-

perform the disclosed algorithm." <u>WMS Gaming, Inc. v. International Game Tech.</u>, 184 F.3d 1339, 1349 (Fed. Cir. 1999). In the specifications, Figures 9A-E are "flow chart[s] which illustrate[] the steps which bank central computers take, through a keypad and display, to collect funds, manage funds internally and to disburse funds."  (Doc. #1-2, p. 37, col.1 l.35-38.)  Figures 10A-E are flow charts of the steps which credit card issuers take to perform the same functions.  (Doc. #1-2, p. 38, col.1 l.40-43.) The Court concludes that "computing means" means "the bank or card issuing institution's central computer, with a keypad and display, that is programed to carry out the algorithm disclosed in Figures 9A through E or 10A through E of the '191 patent."  The objection is otherwise overruled.

Accordingly, it is now

**ORDERED**:

1.  The Report and Recommendation (Doc. #164) is **accepted in part, rejected in part, and modified in part** as set forth above.

2.  The Court finds that the disputed terms of Claim 15 have the following meaning:

>   (A) "Excess determinant established by the Payor" means "an amount, determined by applying a numerical function against the face amount of each of the payor's financial transaction, that the payor instructs to be added to or subtracted from a financial transaction;"

(B) "Determining an excess payment [on] the basis of the determinant established by the payor" means "calculating an excess payment based on the amount, determined by applying a numerical function against the face amount of each of the payor's financial transaction, that the payor instructs to be added to or subtracted from a financial transaction;"

(C) "Apportioning" means "dividing and assigning according to some rule of proportional distribution;"

(D) "Accounts" means "one or more accounts;" and

(E) "Computing means" means "the bank or card issuing institution's central computer, with a keypad and display, that is programed to carry out the algorithm disclosed in Figures 9A through E or 10A through E of the '191 patent."

**DONE AND ORDERED** at Fort Myers, Florida, this  29th  day of September, 2008.

*John E. Steele*
JOHN E. STEELE
United States District Judge

Copies:
Hon. Sheri Polster Chappell